UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:   13-60222-CR-HURLEY

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

BRADEN ESCOBAR,

    Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, BRADEN ESCOBAR, (hereinafter Braden), and through counsel respectfully moves this Honorable Court to consider the circumstances of the Defendant as they relate to Section 3253(a) (2) in allowing for a variance in this case. Braden Escobar will stand before Your Honor for Sentencing on Wednesday, December 18, 2013.

## STATUTORY SENTENCING FACTORS AND DISCRETION OF SENTENCING COURTS

As a result of the Supreme Court decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the Sentencing Guidelines are now "effectively advisory" in all cases. Id, at 757. The result is that a District Court must now "consider guideline ranges", but may "tailor the sentencing in light of other statutory concerns as well." Id. at 757. Thus under *Booker*, sentencing courts must treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. §3553(a). The basic mandate and overriding principle of section 3553(a) requires a District Court to impose a sentence "sufficient, but not greater than necessary, "to comply with the four purposes of sentencing set forth in section 3553(a) (2):

1

  (a) Retribution - to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (b) Deterrence - to afford adequate deterrence to criminal conduct;

  (c) Incapacitation - to protect the public from further crimes of the defendant; and,

  (d) Rehabilitation - to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining what sentence is sufficient, "but not greater than necessary" to comply with § 3553(a)(2) purposes of sentencing, the sentencing court is further directed to consider the following factors:

  (1) "The nature and circumstances of the offense and the history and characteristics of the defendant";

  (2) "The kinds of sentences available";

  (3) "The Guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

  (4) "The need to avoid unwarranted sentencing disparity among defendants who have been found guilty of similar conduct", and

  (5) "The need to provide restitution where applicable. 18 U.S.C. § 3553(a) (1), (a) (3)-(7)."

  Neither the statute itself nor *Booker* suggests that any one of these factors is to be given greater weight than any other factor. However, what is clear is that all of these factors are subservient to § 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing. A sentencing court is further

guided by 18 U.S.C. § 3582, which provides that in determining whether and to what extent imprisonment is appropriate based on the § 3553(a) factors, the judge is required to "recognize that **imprisonment is not an appropriate means of promoting correction and rehabilitation**" (emphasis added).

In *Rita v. United States*, 127 S. Ct. 2456, (S. Ct. 2007) the Supreme Court held that Courts of Appeal may presume that a guideline sentence is reasonable, but stressed the presumption was "an appellate court presumption [that] applies only on appellate review". By contrast, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." In *United States v. Sachsenmaier*, 491 F3d 680 (7th Cir. 2007) (post – *Rita* case) the Court stated the "District Courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553 (a) without any thumb on the scale favoring a guideline sentence."

In *United States v. Santoya*, 493 F. Supp. 2d 1075 (D.D. Wisc.) the Court stated that under *Rita* "the sentencing judge is forbidden from indulging a presumption that the Guidelines sentence is the correct one."

In *Kimbrough v. United States*, 552 U.S. 2007 (December 10, 2007) No.:06-6330, a case involving the disparity between punishment for crack-cocaine and cocaine powder form, the Court concluded that the sentencing guidelines are advisory only, and rejected the lower court's ruling that they are effectively mandatory.

In *Gall v. United States*, 552 U.S. (2007) No.: 06-7949, the Court basically cleared the way for judges to impose sentences below the specified range and still have

3

punishment regarded as "reasonable." Justice Stevens told Federal Appeals Courts to use a "deferential abuse-of-discretion standard" even when a trial court sets a punishment below the range. The *Gall* decision overturned a ruling by the Eighth Circuit Court that a below-guideline sentence would be reasonable only if justified by "extraordinary circumstances."

## APPLICATIONS OF THE STATUTORY SENTENCING FACTORS TO THE FACTS OF THIS CASE

The Defendant, Braden Escobar, through undersigned counsel, urges this Court to consider the following factors when determining what sentence is "sufficient, but not greater than necessary", to satisfy the purposes of sentencing:

(1) <u>The nature and circumstances of the offense and history and characteristics of the defendant</u>.

(a) **The offense**: Braden Escobar pled guilty on October 7, 2013, to the one (1) Count Superseding Information charging him with Unlicensed Firearms Dealing, in violation of 18 U.S.C. § 922(a) (1) (A).

On or about March 22, 2013, agents from the Bureau of Alcohol, Tobacco and Firearms (ATF) received information regarding the seizure of ten (10) firearms in Ecuador which were traced back to Braden Escobar as the original purchaser. Agents found that Braden frequently traveled to Florida to make purchases of firearms and returned to Ecuador where he sold the firearms. Between September 6, 2010 and January 29, 2013, Braden allegedly purchased one hundred and fifteen (115) firearms from multiple firearms licensees, mainly in Florida. It was found that the purchases occurred during twenty-five (25) separate transactions, and during at least twenty-one (21) of said transactions, ATF Form 4473's listed Escobar's residence as 23427 Drayton

4

Drive, Boca Raton, Florida, and Florida as his State of residence. Braden also provided his Florida Driver's License with the same address.

During his arrest at Miami International Airport on August 20, 2013, Braden admitted that he resided in Ecuador for the past eight (8) years and operated a fishing and hunting company in Ecuador. He admitted to purchasing the firearms in Florida and providing false residence information on the ATF 4473's. Further, Braden indicated that he utilized a shipping company in Florida to transport the firearms to Ecuador disguised as fishing tackle for his fishing operation. Braden also admitted that he knew that he needed to be licensed to carry-out such endeavors, and he further indicated that he knew he needed to obtain a Federal Firearms Dealer's License.

(b)     **The defendant**:  Braden is currently thirty-nine (39) years of age. He was born in New Orleans, Louisiana and is a United States citizen. Braden attended and graduated high school in Ecuador, and between 1992 and 1996, he returned to the United States and attended college in Texas and Louisiana, ultimately graduating from Louisiana State University (LSU) in 1996. Following graduation, he returned to Ecuador and has resided there since.

Braden is married and has a three (3) year old son.

Braden has traveled frequently between Ecuador and the United States since graduating college. After beginning his company, "Ecuagringo," "The Pioneer of Galapagos Sportsfishing," Braden has continually traveled to Florida, in addition to the allegations set forth hereinabove, to meet with his clientele, who predominantly reside in Florida, visit family and friends, attend alumni activities at LSU and locally in South

Florida, meet with suppliers for his fishing/hunting outfitter business, and attend trade shows.

When Braden would stay in the United States, he would often reside at his mother's home in Boca Raton; specifically, 23427 Drayton Drive, Boca Raton, Florida. There, he had his own room, which contained his personal possessions, clothing, office supplies, desk and computer, toiletries, and bank records regarding his local banking accounts. Braden also possessed a Florida Voter Registration Card, possessed a U.S. Passport, and had paid taxes on his prior employment in the United States.

Braden is in good health and has no history of mental or physical problems. Additionally, Braden has no history of substance abuse.

Braden possesses a Bachelor's of Science Degree in Agriculture and Business from the Louisiana State University (LSU) in 1996.

(2) <u>The kinds of sentences available; Braden's guidelines, and basis of Braden's request to be sentenced below the guideline range.</u>

Braden's total offense level is twenty-one (21) with guidelines of 37-46 months, Criminal History Category I (zero criminal history points).

(a) **<u>First conviction justifies downward variance</u>:**

In the *United States vs. Paul*, 561 F.3d 970 (9th Cir. 2009), the defendant was convicted of embezzlement and the guidelines were 10-16 months, it was found that the Court's within guidelines sentence of fifteen (15) months was unreasonably high in part because the defendant was a first time offender with no criminal history.

Additionally, in *United States vs. Autery*, 555 F.3d 864 (9th Cir. 2009), the defendant was convicted of possession of child pornography, and the guidelines were 41-

6

51 months, it was found that the Court's sua sponte variance to probation was not unreasonable in part because it was the defendant's first conviction and "the criminal history Level I did not fully account for his complete lack of criminal history" because a defendant with minor criminal history still falls in Category I.

In *United States vs. Huckins,* 529 F.3d 1312 (10th Cir.2008), where the defendant was convicted of possession of child pornography and the relevant guidelines were 78-97 months, the Court's variance to twenty-four (24) months was found to be proper in part because it was the defendant's first conviction. The Appellate Court rejected the Government's argument that the guidelines already considered this by placing the defendant in Category I, citing "although the guidelines discouraged granting a downward departure based upon criminal history when the defendant has been placed in the criminal history Category I, this is not a departure case, it is a variance case…. and, the district court may weigh defendant's lack of a criminal record, even when the defendant has been placed into a criminal Category I in its section 3553 (a) analysis. *See also, United States vs. Ward* 314 F.Supp.23 (E.D. VA. 1993) the Court found that departure was warranted because guidelines failed to consider length of time defendant refrained from commission of first crime (49 years of age), in the instant case, thirty-nine (39) years.

Braden has a total of zero (0) criminal history points in this matter, and respectfully, Braden seeks a variance below the sentencing guidelines based, in part, upon this factor.

**(b) Defendant's otherwise good character:**

In *Autery,* 555 F.3d 864 (9th Cir. 2009), again, where the Court sua sponte granted a variance to probation where the guidelines were 41-51 months, it noted the defendant's positive characteristics "such as his having no history of substance abuse, no interpersonal instability, no sociopathic or criminalistic attitude, his motivation and intelligence, and the support of his wife and child." "These characteristics 'undoubtedly constitute history and characteristic of the defendant that justify a variance below guidelines.'". *Id.*

*United States vs. Wachowiak,* 412 F.Supp.2d 958 (E.D. Wisc. 2006) **aff'd.** 496 F.3d 744 (7th Cir. 2007), where a twenty-four (24) year old music student was convicted of child pornography possession, and guidelines were 121-151 months, the court imposed seventy (70) months in part because the defendant was in treatment and was found to be at a low risk of recidivism, and had strong support from family. The Court cited "the guidelines failed to consider defendant's otherwise outstanding character, as depicted in many supportive letters." "While section 3553(a) (1) requires the Court to consider the character of the defendant, the guidelines account only for criminal history." Therefore, the Court further stated that "where the defendant led an otherwise praiseworthy life, the Court should consider a sentence below the advisory range." *Id.*

Braden has no criminal history, a history of substantial gainful work activity, and a strong network of family and friends.

**(c) Good employment history:**

In *United States vs. Ruff*, 535 F.3d 999 (9th Cir.2008) the defendant plead guilty to embezzling six hundred and fifty thousand dollars ($650,000.00) from a non-profit

organization over the course of three (3) years and the guidelines were 30-37 months, a sentence of one (1) day in jail and supervised release for three (3) years on the condition that the defendant spend one (1) year in a community treatment center and obtain counseling was not unreasonable in part because of the defendant's "history of strong employment".

In the case at bar, the defendant worked tirelessly following graduation from college in various jobs, all with the goal of one day opening and running his own hunting and fishing operation in the Galapagos Islands. Braden achieved that goal after years of hard work, saving money, and determination evidenced by his work ethic. It took savings, drive, patience, client development, knowledge and skill in establishing a business and operating an echo-friendly hunting and fishing outfit within the highly protected Galapagos Sanctuary.

### (d) **<u>Family Support aides rehabilitation and lowers rick of recidivism</u>**:

"The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures" Shirley R. Klein, *et al*., *Inmate Family Functioning*, Int'l J. Offender Therapy & Company Criminology 95,99-100 (2002). "The better family ties are maintained, the lower the recidivism rate." Phyllis J. Newton, Jill Glazer, & Kevin Blackwell, *Gender, Individuality and the Federal Sentencing Guidelines,* 8 Fed. Sent'g. Rep. 148 (1995).

In *U.S. v. Wachowiak*, 412 F.Supp.2d 958, (E.D. Wisc. 2006) **aff'd.** 496 F.3d 744 (7th Cir. 2007), the court greatly departed from a guideline sentence from a low end sentence of 120 months to seventy (70) months in part because "the guidelines failed to

account for the strong family support the defendant enjoyed, which would aide in his rehabilitation and reintegration into the community."

Your Honor has received numerous letters from friends, family, and colleagues of Braden which clearly signify that Braden possesses a strong network of family and friends in both Florida and Ecuador to assist him in his rehabilitation from incarceration and avoid any chance of recidivism. Braden comes from a strong family who have stood by him since his arrest in August 2013. Upon hearing of his arrest and the charges, they were devastated to say the least, but they have shown determination, undying support, devotion, love and loyalty to Braden in this tumultuous time. Never again will Braden risk being isolated from his wife and young son. Being away from his wife and three (3) year old son has been traumatic to Braden. Retribution and deterrence have been afforded by this facet alone. The fact that Braden feels helpless regarding the emotional and financial support of his immediate family has had a tremendous deterring effect upon Braden.

**(e) <u>Judge's own sense of what is fair and just</u>:**

In *United States v. Jones,* 460 F.3d 191 (2nd Cir. 2006), a felon in possession of firearms case where the guidelines called for thirty-six (36) months, the Appellate Court held that the district court properly imposed a non-guideline sentence of fifteen (15) months when he considered his own sense of what is fair and just. The Court stated, although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553 (a)(1), "the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and a just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject

to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness."

## **CONCLUSION**

There is never a good time to be incarcerated, for Braden Escobar this is the worst of times. He will be sentenced and labeled and restricted for the rest of his life as a convicted felon. He faces sentencing with the realization that he will potentially lose his good name and profession.

Notwithstanding the above, the fact remains that Braden Escobar will be punished for his misdeeds, and the question remains, what is sufficient, but not greater than necessary to comply with the sentencing directives. Judge Hurley, in answering that question, I implore you to be merciful when sentencing this otherwise good and decent man who stands before you with a strong network of family and friends and an unblemished criminal history. Please consider a fair and just sentence below guidelines. Specifically, Braden implores you to use your discretion and sentence him to a term of probation based upon the factors reviewed, in part, hereinabove.

Other grounds to be argued ore tenus.

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk using CM/ECF and furnished to all parties of Record this 11th day of December 2013.

Respectfully submitted,

| VOLUCK & MERLINO, P.L. | VOLUCK & MERLINO, P.L. |
|---|---|
| 101 N. E. Third Avenue, #1430 | 101 N.E. Third Avenue, #1430 |
| Fort Lauderdale, Florida 33301 | Fort Lauderdale, Florida 33301 |
| Telephone:  954-467-8989 | Telephone:  954-467-8989 |
| Facsimile:  954-745-7698 | Facsimile:   954-745-7698 |
| E-Mail:  acquit00@bellsouth.net | E-Mail:  richmerlinoesq@gmail.com |
| By:  /s/ Jeffrey M. Voluck | By:   /s/ Richard A. Merlino |
| Jeffrey M. Voluck | Richard A. Merlino |
| Florida Bar: 0113750 | Florida Bar:  0977640 |